J-A06042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| JAMIE L. QUICK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMSHID K. ASSADINIA | : | No. 1013 MDA 2018 |

Appeal from the Order Entered June 1, 2018
In the Court of Common Pleas of Centre County Civil Division at No(s):
2013-3142

BEFORE:  OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:          **FILED: MARCH 28, 2019**

Jamie L. Quick (Quick) appeals from an order of the Court of Common Pleas of Center County (trial court) granting the motion for summary judgment filed by Jamshid K. Assadinia (Dr. Assadinia) because her expert's opinion as to the cause of the injury was inadmissible because it was not based on expert scientific testimony having general scientific acceptance.  We affirm.

We take the relevant facts and procedural history from our independent review of the certified record.  On August 20, 2011, Quick chipped her tooth, resulting in pain to her lower right molar.  She contacted Dr. Assadinia's dental office and Dr. Assadinia extracted the tooth the same day.  Post-operatively, Dr. Assadinia prescribed Vicodin for pain and twenty 500-milligram tablets of the antibiotic Amoxicillin to prevent any possible infection.

_____

* Retired Senior Judge assigned to the Superior Court.

Eleven days later, Quick presented at Mount Nittany Medical Center complaining of a sore throat. The emergency room personnel referred her to otolaryngology (Ear, Nose and Throat (ENT)) specialists, Dr. Gerry Beresny and Dr. Michael J. Clark, for evaluation of white splotches on her soft palate, which were fixed onto the mucosal tissue and not easily removable for a biopsy. Drs. Beresny and Clark diagnosed Quick with acute nasopharyngeal stenosis (NPS). Multiple surgeries performed thereafter in an attempt to keep Quick's nasopharynx open failed. Quick now wears a custom stent to keep her nasal passage open and suffers from frequent migraine headaches, pharyngitis (sore throat and inflammation of the pharynx), food and liquid regurgitation into her nose and hyper-nasal speech.

On August 12, 2013, Quick commenced a medical malpractice action against Dr. Assadinia. On January 1, 2018, after the pleadings closed and the parties completed discovery, Dr. Assadinia filed a motion for summary judgment which the trial court denied in all respects other than the ***Frye***[1] challenge to the proposed causation testimony of Quick's expert, dentist Dr. William Choby. After a hearing, the court excluded Dr. Choby's testimony and granted Dr. Assadinia's motion for summary judgment. Quick timely appealed and she and the trial court complied with the requirements of Rule 1925. ***See*** Pa.R.A.P. 1925(a)-(b).

---

[1] ***Frye v. United States***, 293 F. 1013 (D.C. Cir. 1923).

Quick argues that the trial court erred in precluding the expert report and testimony on causation of her expert, Dr. Choby, on the basis of *Frye*,[2] and in granting Dr. Assadinia's motion for summary judgment.[3] (*See* Quick's Brief, at 13-19).

It is well-established that in a medical malpractice action, the plaintiff bears the burden of presenting evidence "from an expert who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." *Checchio*, *supra* at 1060. For expert evidence to be admissible, it must meet the standard enunciated in *Frye*. *See id.* Pursuant to *Frye*, expert scientific testimony must have general acceptance in the relevant community in order to be admissible. *See Frye*, *supra* at 1014; *see also Commonwealth v. Topa*, 369 A.2d 1277, 1281 (Pa. 1977) (adopting *Frye* test in Pennsylvania). "*Frye's* general acceptance

---

[2] We apply an abuse of discretion standard to the trial court's *Frye* ruling. *See Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003).

[3] "The standard for determining whether summary judgment is properly entered is [whether] a non-moving party [] adduce[d] sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Checchio By and Through Checchio v. Frankford Hosp.-Torresdale Div.*, 717 A.2d 1058, 1059 (Pa. Super. 1998), *appeal denied*, 781 A.2d 137 (Pa. 2001) (citation and internal quotation marks omitted).

standard requires only that the scientific community generally accept the principles from which the scientist is proceeding and the methodology the scientist is employing to reach his or her conclusions." ***Haney v. Pagnanelli***, 830 A.2d 978, 982 (Pa. Super. 2003) (citation omitted).

In this case, Quick's expert, Dr. Choby, offers general practice services and dental implants in his practice, and he is on the consulting staff at Excela Hospital Systems in Greensburg, Latrobe and Mount Pleasant, Pennsylvania. (***See*** N.T. Hearing, 5/31/18, at 5). He is board certified in implantology and has had continuing education in infectious diseases of the oral cavity. (***See id.*** at 7). He testified at the ***Frye*** hearing that after reviewing Quick's medical records, he concluded that extreme doses of Amoxicillin caused Candidiasis resulting in Quick's NPS. (***See id.*** at 16-17). In support of his hypothesis, Dr. Choby relied on medical literature that reflected the possible adverse reactions to taking Amoxicillin, which included Candidiasis. (***See*** Plaintiff's Exhibit 3, at 3; Plaintiff's Exhibit 4, at 2).

On cross-examination, Dr. Choby admitted that although he recognizes and refers patients with abnormal conditions to specialists, he does not treat or diagnose complications that affect the nasopharyngeal area of a patient because he lacks the training, education and experience to do so. (***See id.*** at 19-20). He also stated that he has not conducted any testing of his hypothesis that Candidiasis causes NPS or relied on any scientific literature that supports this principle because it is "outside [his] area." (***Id.*** at 23). When asked if he

- 4 -

could "point out any medical literature that the theory that [C]andidiasis leads to [NPS] is generally accepted in the medical community[,]" he responded that he had not researched that. (*Id.* at 25; *see id.* at 26). Finally, when shown Quick's lab report, Dr. Choby admitted that it reflected that she had Group C Streptococcus, not Candidiasis, and he acknowledged that antibiotics are used to control Strep, they do not cause it. (*See id.* at 37-38).

Dr. Scott Celin was Dr. Assadinia's expert otolaryngologist, or ENT specialist, the same specialty as Drs. Beresny and Clark, who diagnosed Quick's NPS. (*See id.* at 42-43, 49). Dr. Celin testified that NPS requires necrosis of the tissue, and that known causes of NPS include trauma such as surgery on the soft palate or radiation treatments for cancer of the nasopharynx that have resulted in scar tissue. (*See id.* at 46-47). He stated that based on an "extensive literature search," he did not find any cases of Candidiasis causing NPS. (*Id.* at 47). He noted that in order for NPS to occur, there has to be some tissue death and scarring, and that Candidiasis is a superficial disease typically confined to the oral cavity, not the nose or nasopharynx. (*See id.*). He expressly stated that he is not aware of any literature, peer reviews or case studies that support a hypothesis that Candidiasis causes NPS, and that "the hypothesis that Candidiasis causes NPS is [not] a generally-accepted scientific principle in the field of otolaryngology [or any other field]." (*Id.* at 48). He maintained that the theory that Candidiasis causes the development of NPS would be a novel one. (*See id.*

at 49). Finally, he pointed out that in any event, Quick's lab reports reflected that she had a bacterial infection, *i.e.*, Streptococcus, **not** the fungal infection Candidiasis. (***See id.*** at 52).

Defense expert Dr. Barry Stein, a board certified oral and maxillofacial surgeon, testified that Dr. Choby's education in general dentistry and dental implants would not provide him with the training, education and experience to diagnose NPS. (***See id.*** at 63-64). Dr. Stein stated that he is unaware "of any generally-accepted scientific principles, literature, [or] methodology in the field of dentistry or oral surgery that supports a hypothesis that Candidiasis will cause NPS[.]" (***Id.*** at 64-65). His report reflected that "[he found Dr. Choby's] review of the records not accurate and [that] his conclusions are not backed up by any facts and at best he is guessing at a diagnosis." (***Id.*** at 65). He observed that nothing in Quick's lab reports reflected that there was Candidiasis or any other fungal infection. (***See id.*** at 66).

As a result of the ***Frye*** hearing, the trial court observed:

Based on the evidence presented, [it] concluded that Dr. Choby's expert report would constitute novel scientific evidence, as there was no medical literature to support his conclusions that Candidiasis caused the [NPS]. Further, the [c]ourt found Dr. Choby's lack of accurate and complete information, specifically the failure to test the white splotches or be aware of the Streptococcus diagnosis which was in the medical records, when determining his opinion[,] failed to meet with acceptable standards and methodology in the medical community. The [c]ourt found that Dr. Choby's report would also be more prejudicial than probative given that it was premised on incomplete and inaccurate information not warranted by the record, specifically that Candidiasis was present when the record shows that it was

Streptococcus. For all of these reasons, the [c]ourt excluded Dr. Choby's report and granted summary judgment.

(Trial Ct. Op., at 2).

The hypothesis on which Dr. Choby relied, that Candidiasis causes NPS, is a novel scientific principle that is neither contained in the scientific literature nor generally accepted in the medical community and, therefore, fails the **Frye** test. **See Frye**, **supra** at 1014; **Topa**, **supra** at 1281; **Haney**, **supra** at 982.[4] Accordingly, we affirm the trial court's order excluding Dr. Choby's expert report on the basis of **Frye** and granting Dr. Assadinia's motion for summary judgment due to Quick's failure to present sufficient evidence of causation to create a genuine issue of material fact. **See Grady**, **supra** at 1046; **Checchio**, **supra** at 1059-60.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/28/2019

---

[4] We also agree with the court that Dr. Choby's assumption that Quick had Candidiasis, a fungal infection, conflicted with the evidence in her medical records that she had Streptococcus, a bacterial infection.